UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
GMD SHIPYARD CORP.,                          :

                    Plaintiff,               :

          -against-                          :          11 Civ. 1631 (RMB)(THK)

                                             :          **REPORT AND RECOMMENDATION**

                                             :

                                             :
NACIREMA ENVIRONMENTAL SERVICE               :
COMPANY INC., et al.,                        :

                                             :
                    Defendants.              :
------------------------------------X
**TO: HON. RICHARD M. BERMAN, UNITED STATES DISTRICT JUDGE.**
**FROM: THEODORE H. KATZ, UNITED STATES MAGISTRATE JUDGE.**

Plaintiff GMD Shipyard Corporation ("GMD") brought an _in
personam_ action against Defendant Nacirema Environmental Service
Corporation ("Nacirema") and an _in rem_ action against the Barge
Bulldog, alleging that Nacirema had hired GMD to repair the barge,
and had not paid for the repairs.  Claimant Sterling Equipment,
Inc. ("Sterling"), the owner of the barge, brought a cross-claim
against Nacirema, seeking indemnification for any liability against
the barge owed to Plaintiff, and alleging that Nacirema had
breached its charter agreement with Sterling.  After GMD was paid
for the repair costs by Nacimera's insurer, the underlying case
between Nacirema and GMD was voluntarily dismissed in June 2011.
Nacirema failed to answer Sterling's cross-claims or otherwise

1

defend itself against the cross-claims, and a default judgment against Nacirema was entered on those claims on October 24, 2011. The case was then referred to this Court for an inquest on damages.

Claimant Sterling Equipment submitted Proposed Findings of Fact and Conclusions of Law ("Proposed Findings"), as well as affidavits and attorney billing records, in support of its request for damages, interest, and attorneys' fees. Nacimera has neither submitted any opposition nor communicated any intention to submit any opposition to Sterling's application.

Having considered the inquest submissions, for the following reasons I respectfully recommend that judgment be entered in favor of Sterling in the amount of $53,437.67.

BACKGROUND

In light of Defendant's default, the following facts, set forth in the Cross-Claims, are accepted as established. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992) ("[w]hile a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages"); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981); S.E.C. v. Management Dynamics, Inc., 515 F.2d 801, 814 (2d Cir. 1975); Trans World Airlines, Inc. v. Hughes, 449 F.2d 51, 69 (2d Cir. 1971), rev'd on other grounds, 409 U.S. 363, 93 S. Ct. 647 (1973).

Sterling, a Massachusetts corporation, is the owner of the Barge Bulldog. (See Claimant's Answer and Cross-Claim, Apr. 20, 2011 ("Cross-Cl.") ¶ 30.)   Nacirema, a New Jersey corporation, signed a charter agreement ("the Charter Agreement") for the Barge Bulldog sometime around September 29, 2009, for an initial charter term of June 26, 2010 to July 25, 2010, which term would be automatically extended. (See id. ¶ 34.)   The Charter Agreement provided that Nacirema would pay for all repairs to the barge, except "ordinary wear and tear," during the charter period.  (See id. ¶ 36.)  The cost of the charter was $10,000.00 per month, plus sales tax of $887.50.  Under the Charter Agreement, Nacirema was also liable for 1.5% interest per month on all past due amounts, and enforcement and collection costs, including attorneys' fees. (See id. ¶ 38.)  Nacirema was prohibited from incurring any liens on the barge, and agreed to indemnify Sterling for liens against the barge claimed by third parties.  (See id. ¶ 39.)   Nacirema breached the Charter Agreement by failing to pay all of the charter fees (see id. ¶ 46), by incurring liens against the barge (see id. ¶ 48), and, for a period of time, by failing to pay for repairs to the barge.  (See id. ¶ 49.)

## DISCUSSION

Under the terms of the Charter Agreement, Nacirema was obligated to pay $10,000.00 for each month of charter, until the

vessel was redelivered to its owner, plus a monthly sales tax of
$887.50.   Thus, for each month of charter, invoices were issued to
Nacirema in the amount of $10,887.50. (<u>See</u> Declaration of Mark
Quinn in Support of Order to Show Cause for Default Judgment, dated
Sept. 14, 2011 ("Quinn Decl."), Exhibit ("Ex.") A (the Charter
Agreement).)   The charter period for the barge began on June 26,
2010.   While the Charter Agreement was nominally for one month, it
could be automatically extended under the same terms. (<u>See</u> <u>id.</u> ¶
20.)   Moreover, charter hire fees were due until the vessel was
redelivered to Sterling. (<u>See</u> Charter Agreement ¶ 4.)   During the
charter period, on or about October 10, 2010,   the barge was
grounded and damaged, and Nacirema contracted with Plaintiff GMD
Shipyard for repairs. (<u>See</u> Quinn Decl. ¶ 10.)   Nacirema was billed
for and failed to pay charter hire fees for the months of July 2010
through October 2010, for a total of $43,550.00 ($10,887.50 X 4).
(<u>See</u> Quinn Decl. ¶ 13 & Ex. B.)   The Charter Agreement provides
that the charterer shall pay interest on past due amounts at a rate
of 1.5% per month. (<u>See</u> Charter Agreement ¶ 4.)   Thus, monthly
interest of 1.5%, on $10,887.50, is $163.31.[1]   Sterling requests
interest in the period from August 2010, when the first charter
payment became past due, through August 2011. (<u>See</u> Quinn Decl. ¶¶

---

[1] Sterling has only requested simple, rather than compound
interest.   (<u>See</u> Quinn Decl. ¶¶ 14-17.)

14-17.)

| Invoice Date | Charter Fee Owed | Months Past Due | Interest | Total |
|---|---|---|---|---|
| 7/25/10 | $10,887.50 | 12 | $1,959.72 | $12847.25 |
| 8/26/10 | $10,887.50 | 11 | $1,796.41 | $12683.94 |
| 9/26/10 | $10,887.50 | 10 | $1,633.10 | $12520.63 |
| 10/26/10 | $10,887.50 | 9 | $1,469.79 | $12357.31 |
| Totals | $43,550.00 | | $6,859.02 | $50409.02 |

Nacirema is therefore liable for charter-hire fees plus interest in the total amount of $50,409.02.

Sterling also requests, and is entitled to, its attorneys' fees and costs. The Charter Agreement provides that Nacimera shall be liable for all costs of collection and enforcement incurred by Sterling, including attorneys' fees and expenses (see Charter Agreement ¶¶ 4, 21(k)).

As required in this Circuit, see Scott v. City of New York, 626 F.3d 130, 133 (2d Cir. 2010) (citing New York State Ass'n for Retarded Children v. Carey, Inc., 711 F.2d 1136 (2d Cir. 1983)), Sterling has submitted a description of the work its attorneys performed in enforcing the Charter Agreement, as well as contemporaneous records reflecting the time spent by its attorneys

in enforcing the Charter Agreement. (See Declaration of Bradley F. Gandrup, Jr. in Support of Order to Show Cause for Default Judgment, dated Nov. 21, 2011 ("Gandrup Decl.") ¶ 20 & Exs. B & C.) The Court has reviewed the records and concludes that the time spent by counsel was reasonable.[2] Moreover, counsel's hourly rates are reasonable.  In determining a "reasonable hourly rate," courts are to be guided by what a paying client would be willing to pay, keeping in mind that a reasonable paying client would wish "to spend the minimum necessary to litigate the case effectively." Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 190 (2d Cir. 2008).  Sterling's lead counsel is a maritime attorney who has been practicing in New York, Boston, and Providence, Rhode Island since 1983.  He billed Sterling at his Boston rate of $300 per hour, which is significantly lower than he bills clients in New York. (See Gandrup Decl. ¶ 22.)  The associate from his firm who worked on this matter, and who has been a

---

[2] There was significant time spent enforcing the Charter Agreement in addition to the time spent in this litigation.  For example, following the casualty to the barge, counsel had to confer with the shipyard that undertook the repairs, negotiate with GMD and Nacimera's insurance carrier concerning the repair costs, seek reimbursement for the repairs to the vessel from Nacimera's insurance carrier, and seek recovery on the bond that Nacimera had posted.  They also had to prepare a claim in connection with GMD's in rem complaint against the vessel, answer the in rem complaint, and prepare and file cross-claims in this action.

6

maritime attorney since 2007, billed at hourly rates of $195.00 and $205.00 per hour. (See id. & Exs. B & C.)   The actual invoices to Sterling, which were paid, reflect those rates.

From the date of the casualty through October of 2011, Sterling was billed and has paid $35,691.15 in connection with this matter.[3]  Their attorneys have been paid Accordingly, Sterling is entitled to this amount in fees and costs.

### CONCLUSION

The total amount of charter fees, interest, attorneys' fees, and costs for which Nacimera is liable to Sterling is $86,100.17. Sterling had advised the Court that it actually received a payment from the bonding company with whom Nacimera posted a bond in the amount of $32,662.50. (See Letter from Brad Gandrup, Jr., dated Jan. 23, 2012.)   After crediting that amount, Sterling is owed $53,437.67.  This Court, therefore, respectfully recommend that a default judgment be entered against Nacimera in the amount of $53,437.67.

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72(b) of the

---

[3] The records submitted to the Court with Sterling's motion were inaccurate, because both a revised and original invoice for the same period were included in Sterling's exhibits.  Sterling's counsel has corrected the mistake, and submitted additional records.  (See Letter from Brad Gandrup, Jr., dated Mar. 9, 2012.)  The invoices included with the supplemental submission form the basis for the Court's award of fees and costs.

7

Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. <u>See also</u> Fed. R. Civ. P. 6(a) and (d).  Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Richard M. Berman, and to the chambers of the undersigned, Room 1660.  Any requests for an extension of time for filing objections must be directed to Judge Berman.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  <u>See</u> <u>Mario v. P & C Food Mkts., Inc.</u>, 313 F.3d 758, 766 (2d Cir. 2002); <u>Spence v. Superintendent</u>, 219 F.3d 162, 174 (2d Cir. 2000); <u>Small v. Sec'y of Health and Human Servs.</u>, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

                     Respectfully submitted,


                     _____
                          THEODORE H. KATZ
                     UNITED STATES MAGISTRATE JUDGE




Dated: March 13, 2012
       New York, New York


                              8